# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | | |
|---|---|---|
| **JERMAINE EUGENE,** | § § § § § § § § § § § § § § | |
| Plaintiff, | | **CIVIL ACTION NO. 7:22-cv-76** |
| v. | | |
| | | **JURY TRIAL DEMANDED** |
| **AFD PETROLEUM LTD.,** | | |
| Defendant. | | |

## ORIGINAL COMPLAINT

Plaintiff JERMAINE EUGENE ("Plaintiff"), by and through his attorneys, ELLWANGER LAW LLLP, brings this action for damages and other legal and equitable relief from the Defendant's violation of the laws proscribing discrimination based on race against Defendant, AFD PETROLEUM LTD. ("Defendant").

## INTRODUCTION

This is an action brought by Plaintiff seeking damages from Defendant for acts of intentional discrimination based on race. Defendant's acts of discrimination are in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, *et seq*.; (§ "1981") and any other cause(s) of action that can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this

Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. § 1981, *et seq.*, as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District. Venue is also proper in that the acts complained of herein, including unlawful employment practices, occurred within the federal District over which this Court has jurisdiction.

## PARTIES

3. At all relevant times, Defendant has continuously been and is now doing business in the State of Texas and has continuously had at least fifteen employees.

4. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under § 1981.

5. Defendant is an independent incorporated entity in the oil and gas industry and supplies bulk fuel, lubricants, and on-site tank storage systems to companies across the United States of America and in Canada. Defendant is headquartered at 1444 78 Avenue NW, Edmonton, AB T6P 1L7, Canada.

6. At all relevant times, Plaintiff worked at Defendant's facility in Midland, Texas.

7. At all relevant times, Plaintiff was an employee of Defendant as that term is defined in § 1981.

8. Plaintiff is African American.

**FACTS UNDERLYING CLAIMS**

9. Plaintiff was hired by Defendant at Defendant's facility based in Midland, Texas in or around June 2017.

10. As part of his job duties, Plaintiff would either be assigned work shifts at Defendant's Midland Facility or be assigned to work shifts at various customer job sites throughout Texas and Oklahoma.

11. Throughout Plaintiff's employment at Defendant's Midland Facility, Plaintiff was subjected to an environment of pervasive discrimination on a near constant and daily basis.

**RACIAL SLURS AND DEROGATORY LANGUAGE**

12. Throughout Plaintiff's employment with Defendant, Plaintiff observed his non-black co-workers and managers frequently use racial slurs and derogatory language.

13. Plaintiff specifically heard his Hispanic co-workers use racial slurs in English or in Spanish when describing or speaking of Black employees' work. The word "nigger" was among the racial slurs that Plaintiff heard on a frequent basis.

14. Plaintiff also observed that his manager, Donald (last name unknown), engaged in these conversations and use similar racial slurs.

15. Plaintiff observed that the hiring of Patrick (last name unknown) led to a marked increase in the use of racial slurs and derogatory language among the non-Black management at Defendant's Midland Facility.

16. Plaintiff specifically overheard Patrick say the word "nigger" on a frequent basis when Patrick was speaking of the Black employees he managed. In addition, Patrick would refer to the Black employees as "from Africa."

17. Plaintiff requested that Patrick refrain from describing him as "from Africa" or refrain from using racial slurs. However, Patrick ignored Plaintiff's requests that he stop using racial slurs or derogatory language.

18. As a result, Plaintiff was subjected to a hostile work environment where racial slurs or derogatory language was common practice.

## DISCRIMINATORY ASSIGNMENTS AND UNEQUAL PAY

19. As Plaintiff began his employment at Defendant's Midland facility, he observed that all the management at Defendant's Midland Facility were non-Black despite the presence of many Black employees at the facility.

20. The management at Defendant's Midland Facility controlled the assignments for each employee, thereby controlling the hours and the locations for Plaintiff's employment.

21. Specifically, the non-Black management controlled whether an employee would "go into the field" (assignment to a work shift away from Midland Facility) or "stay in the yard," (assignment to a work shift at the Midland Facility).

22. An assignment to the "field" would frequently result in overtime pay, and, thus, significantly more pay per week compared to staying in the "yard." Often the assignments to the "field" lasted several weeks, resulting in significantly higher compensation for lengthy periods of time.

23. Plaintiff observed that the non-Black members of management were using their power to control assignments to provide preferential treatment to Hispanic employees over Black employees. Specifically, the non-Black management at Defendant's Midland Facility provided the higher-paying assignments to the "field" to Hispanic employees over Black employees.

24. Upon information and belief, the management at Defendant's Midland Facility discriminated against Plaintiff and other similarly situated black employees on the basis of race by

continually denying Black employees assignments to the "field." As a result, Hispanic employees received significantly higher pay than Plaintiff and other similarly situated Black employees.

25.     In addition to "field" assignments, the non-Black management at Defendant's Midland Facility controlled the type of work that each employee was assigned such as doing office work, oil cannister maintenance, or mechanical repair work.

26.     Plaintiff observed that the non-Black management assigned significantly more dangerous or difficult labor assignments to Black employees compared to Hispanic employees.

27.     For example, Plaintiff observed the non-Black management assign Plaintiff and other similarly situated Black employees labor assignments that involved maintenance on the Midland Facility's diesel gas cannister which was suspended 20 to 30 feet above the ground while Hispanic employees were assigned computer work in the office.

28.     Upon information and belief, the management at Defendant's Midland Facility purposely discriminated against Plaintiff and other similarly situated Black employees on the basis of race by assigning the more difficult or dangerous work duties to Black employees while reserving the easier work duties for Hispanic employees.

## RETALIATION

29.     By or around March 2018, Plaintiff had made numerous attempts to stop the discriminatory assignments and hostile work environment by speaking directly with the non-Black management at Defendant's Midland Facility.

30.     However, all of Plaintiff's attempts did not result in any corrective action or change in the Plaintiff's experiences of discrimination.

31.     As a result, in or around March 2018, Plaintiff, reported his experience of discrimination to Defendant's Human Resources Department. Plaintiff specifically spoke with a female employee at Defendant's Human Resources Department.

32. Despite Plaintiff's reports to Defendant's Human Resources Department, Plaintiff did not observe any change in his experiences of discrimination or notice that any corrective action had been taken by Defendant.

33. Shortly afterwards, in or around April 2018, Plaintiff began noticing that his work shift assignments had been dramatically reduced. Plaintiff then received significantly reduced compensation because he was denied the ability to work enough hours to receive his regular pay.

34. Plaintiff reduced work assignments continued throughout April 2018. Eventually, it became impossible for Plaintiff to earn a living wage because Defendant's non-Black management refused to assign more work for Plaintiff.

35. As a result, Plaintiff could not continue his employment with Defendant and was constructively discharged in or around April 2018.

36. Upon information and belief, Defendant's non-Black management at the Midland Facility chose to reduce Plaintiff's work assignments in retaliation for Plaintiff's March 2018 reports to Defendant's Human Resources Department, thereby leading to Plaintiff's constructive discharge.

## CAUSES OF ACTION

### Count I

**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE, BLACK**
*42 U.S.C. § 1981, et seq.*

37. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

38. The conduct alleged herein violates 42 U.S.C. § 1981, *et seq.*, as Defendant has engaged in the practice of race discrimination including disparate treatment in the terms and

conditions of his employment, including but not limited to discriminatory work assignments and unequal pay.

39. Plaintiff's requests for relief are set forth below.

## Count II

**EMPLOYMENT DISCRIMINATION – HOSTILE WORK ENVIRONMENT**
*42 U.S.C. § 1981, et seq.*

40. Plaintiff a is member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

41. The conduct alleged herein violates 42 U.S.C. § 1981, *et seq.*, as Plaintiff was subjected to a hostile work environment on the basis of his race, Black.

42. Plaintiff's requests for relief are set forth below.

## Count III

**EMPLOYMENT DISCRIMINATION - RETALIATION**
*42 U.S.C. § 1981, et seq.*

43. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

44. Plaintiff lodged complaints with Defendant regarding the discrimination and hostile work environment based on race to which he was subjected, and as such, engaged in protected activity under § 1981.

45. Defendant retaliated against Plaintiff by subjecting Plaintiff to reduced work hours and thereby reduced pay, directly leading to Defendant's constructive termination of Plaintiff's employment in response to his complaints about discrimination.

46. The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.*

47. Plaintiff's requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

48. Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

49. That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the federal law identified above prohibiting discrimination and retaliation in employment;

50. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendant, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiff;

51. That Plaintiff be awarded compensatory damages for his employment discrimination claims including for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

52. That Plaintiff be awarded punitive damages for discriminatory practices done with malice or with reckless indifference to the federally protected rights of Plaintiff;

53. That Plaintiff be awarded pre-and post-judgment interest;

54. That the Court award Plaintiff reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

55. That the Defendant be ordered to require training regarding discrimination based upon race and discrimination based on retaliation.

56.     That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law; and

57.     That the Plaintiff be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
Ellwanger Law LLLP
8310-1 N. Capital of Texas Hwy., Ste. 190
Austin, Texas 78731
Telephone: (737) 808-2260
Facsimile: (737) 808-2262